**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DION THOMAS, <br><br> Defendant. | 11-CR-2046-LRR <br><br> **ORDER** |

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . *1*
*III. RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *2*
*IV.  MOTION FOR NEW TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *A.   Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
*V.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*I.  INTRODUCTION*

The matter before the court is Defendant Dion Thomas's "Motion for New Trial" ("Motion") (docket no. 186).

*II.  RELEVANT PROCEDURAL HISTORY*

On December 8, 2011, the Grand Jury returned a seven-count Indictment (docket no. 7) charging Defendant and five other individuals[1] with a number of crimes.

Defendant was charged in two counts. Count 1 charged Defendant with conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or

---

[1] The other individuals charged were: Alfred Scott, Darryl Williams, Chad Hall, Katina McKenzie-Jackson and Essex McKenzie.

substance containing a detectable amount of heroin, a Schedule I controlled substance, after having been previously convicted of a felony drug offense—this being a violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) and 851. Count 3 charged Defendant with distribution of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, after having been previously convicted of a felony drug offense—this being a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851. The Indictment also contained a forfeiture allegation.

After Defendant and the five other individuals named in the Indictment were arrested, trial was set for August 27, 2012. Defendant elected to go to trial and was subsequently convicted of both counts by a unanimous jury on August 29, 2012. *See* Jury Verdict (docket no. 180).

On September 12, 2012, Defendant filed the Motion, which requests that the court grant him a new trial on the grounds that the court infringed on his right to present a defense and his right to confront witnesses. On September 19, 2012, the government filed a Resistance (docket no. 187). The matter is fully submitted and ready for decision.

### III.  RELEVANT FACTUAL BACKGROUND

The uncontested trial evidence established that Defendant lived in Chicago, Illinois, and made frequent trips to Waterloo, Iowa, between 2009 and 2011. In Waterloo, Defendant spent considerable time with his mother's sister, Katina McKenzie-Jackson ("Tina"), and his mother's brother, Essex McKenzie ("Essex"). According to the testimony of cooperating witnesses, Defendant's travel to and from Chicago was for the purpose of transporting heroin and crack cocaine to Waterloo for distribution to a variety of individuals, including Tina, Essex, Alfred Scott (street name "Donta") and others.

Defendant came to the attention of law enforcement as a result of a wiretap on Scott's phone. During conversations, voice messages and text messages that spanned December 15, 2010, to January 13, 2011, Defendant and Scott discussed their drug

2

transactions and money owed by Scott to Defendant on prior drug deals. During the conversations, Defendant and Scott did not use the word "heroin" but, instead, used code words and phrases. Some of these conversations were recorded while Defendant was incarcerated at the Linn County Correctional Center on unrelated charges. Defendant told Scott that he was locked up and instructed Scott to get a money order and give it to Defendant's "Auntie." During another recorded conversation, Defendant told Scott that his girlfriend, Anita, would be contacting Scott to give him the address to which Scott was to send a money order. During that same conversation from the Linn County Correctional Center, Defendant told Scott to go to Defendant's Auntie's house, go to the washroom and then call Defendant. Defendant said he would tell him where the "stuff" was in the washroom. Defendant told Scott to get in and out of his Auntie's house before she knows "what's goin' on." In a follow-up phone call, Scott expressed concern that Defendant's Auntie had or would find the "stuff." During Tina's testimony, she confirmed that Defendant had left heroin in her bathroom closet. Scott also testified at trial, and, during his testimony, he explained the meanings of the words and phrases used during the recorded conversations.

Tina and Essex lived in apartments on Sherwood Court, across the parking lot from one another. Some of the drug transactions took place in that parking lot, including a June 23, 2011 controlled buy of .54 grams of heroin from Defendant by Lucious Simmons. Although law enforcement agents watched the controlled buy from a distance and monitored the transaction through a microphone, the recording device worn by Simmons was apparently inadvertently turned off during the buy and thus no audio of it was preserved.

Other cooperating defendants, including Tina and Essex, testified to the drug transactions they engaged in on behalf of or with Defendant. Essex knew of Defendant's girlfriend, Anita, who lived in Chicago. Darryl Williams, Scott's "right-hand man" in the

heroin trade, testified that Defendant supplied heroin to Scott. Lewis Bolden testified that he bought heroin from Tina, which Tina stated she had received from Defendant. VonVetta Sawyers testified that he bought heroin from Scott when he had it. At times, Sawyers had to wait for the heroin to be delivered to Scott by or from Defendant. Jamar Jones testified that he bought crack cocaine from Essex, which Essex stated he had obtained from Defendant. After Defendant and Essex had a falling out, Jones continued to buy crack cocaine either directly from Defendant or through Tina.

While being detained on federal charges, Defendant confided to Christopher Grover, another federal inmate, that he was being held as a result of a controlled buy during which he sold an informant .54 grams of heroin. Defendant told Grover that the audio recorder was not working during the buy. Defendant told Grover that he brought 30 to 40 grams of heroin to Waterloo from Chicago to sell. Defendant stated that his aunt and uncle were selling the heroin for him. Defendant told Grover that, although the agents had monitored his phone calls from the jail, the word "heroin" was never spoken during the conversations and, thus, that was going to be his defense.

Defendant cross-examined all of the government's witnesses and elected to present evidence. Tina's husband, Kevin Jackson, testified that he did not know Tina was involved in heroin distribution, although he thought she might be using drugs. Jackson denied that their apartment on Sherwood Court was used to store or sell drugs. Debra McKenzie ("Debra"), Defendant's mother, acknowledged that Defendant had a girlfriend named Anita who lived in Chicago. Debra attempted to discredit the testimony of her siblings, Tina and Essex, and also attempted to establish that Defendant was in Chicago on June 23, 2011—the date of the controlled buy with Lucious Simmons. According to Debra, Defendant was with her in Chicago helping to celebrate her birthday. In passing, Debra mentioned that Defendant liked to gamble and frequented a casino in the Waterloo area with Essex.

During rebuttal, the government presented evidence through an agent from the Iowa Division of Criminal Investigation as well as Player's Club records from the Isle of Capri Casino suggesting that Defendant was in the Waterloo area at the Isle of Capri Casino and not in Chicago on June 23, 2011.

## IV. MOTION FOR NEW TRIAL

### A. Legal Standard

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

### B. Analysis

Defendant claims that he is entitled to a new trial because the court infringed on his right to present a defense by not allowing him to call Drug Enforcement Administration ("DEA") Task Force Officer Bryan Furman to testify during the defense's case-in-chief. Defendant argues that the court's ruling violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] Defendant also makes a passing reference to the Sixth Amendment right to confront witnesses, although Defendant does not fully address that issue in his brief. The court finds that Defendant's Confrontation Clause argument is without merit. The trial record discloses that Defendant had the opportunity to fully confront all witnesses after they testified on direct examination, and, consequently,

---

[2] Although Defendant cites the Fourteenth Amendment, the Fourteenth Amendment provides that a *state* may not deprive any person of due process. The court shall assume that Defendant intends to rely on the Due Process Clause of the Fifth Amendment, which applies to the federal government.

5

there was no denial of his right to confront witnesses. Thus, the court shall turn to Defendant's due process argument.

During the trial, the government called DEA Task Force Officers Bryan Furman and Kelly Meggers, who had surveilled the controlled buy between Lucious Simmons and Defendant on June 23, 2011. Following the direct testimony of both Agents Furman and Meggers, defense counsel conducted a thorough cross-examination on topics such as investigative techniques used. Defense counsel also cross-examined Agent Furman regarding the cooperating defendants' prior statements during debriefing sessions. Defense counsel attempted to impeach the cooperating defendants' trial testimony using law enforcement reports of those debriefings. Defense counsel's efforts in that regard were hampered because Agent Furman could not recall whether or when cooperating witnesses had mentioned Defendant's name in debriefings, defense counsel did not have all of the reports in hard copy and defense counsel appeared to be somewhat confused himself as to the dates the various cooperators were interviewed and what they said. At the conclusion of Agent Furman's testimony, defense counsel requested an opportunity to recall Agent Furman. The court understood this request to mean that defense counsel would obtain the hard copies of the reports and recall Furman for further cross-examination regarding the debriefings. As it turned out, defense counsel wanted to call Agent Furman to talk further about investigative techniques that had not been employed, even though this issue could have been and was in large part covered during cross-examination, Agent Furman was not on Defendant's witness list and defense counsel had not gone through the proper procedure under 28 C.F.R § 16.23(c)[3] to call Agent Furman as a defense witness. Therefore, the

---

[3] Pursuant to 28 C.F.R. § 16.23(c):

> If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or

(continued...)

court did not permit defense counsel to recall Agent Furman.

After the court denied his request to recall Agent Furman, defense counsel made an offer of proof, which revealed that he would have asked Agent Furman whether it was useful to obtain phone numbers of a suspect during an investigation and whether a person could be tracked using the GPS on a cell phone. Defense counsel also would have asked whether the investigators traced any rental cars back to a rental car agreement. During prior cross-examination of Agents Furman and Meggers, defense counsel had already asked about investigative techniques used to track phone numbers and had established that law enforcement knew that a car Defendant accessed during the June 23, 2011 controlled buy was a rental car but had not obtained the identity of the person on the rental agreement. During closing argument, in addition to challenging the credibility of the government's cooperating witnesses, Defendant argued that there was an inadequate investigation. He argued that the agents had not attempted to identify the subscriber of the cell phone used during some of the monitored conversations. Moreover, Defendant argued that the absence of any audio account of the controlled buy, photographs or surveillance undercut the government's evidence relative to the June 23, 2011 controlled buy. Defendant further argued that the government had failed to link any rental vehicles to him. As to the conspiracy count, Defendant argued that the agents had failed to use reliable investigatory tools in this case and had instead elected to rely on informants who would testify to anything to get a sentence reduction.

A defendant's right to present testimony of witnesses in his defense is a fundamental right guaranteed by the Fifth and Sixth Amendments to the Constitution. *United States v. Herbst*, 668 F.3d 580, 585 (8th Cir. 2012). However, merely showing that a court denied

---

[3](...continued)
> by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department [of Justice] attorney handling the case or matter.

a defendant's request to present particular testimony during a trial is insufficient to establish a violation of this right. Rather, the defendant must "'at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense.'" *United States v. Turning Bear*, 357 F.3d 730, 733 (8th Cir. 2004) (alteration in original) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). A district court has wide latitude to exclude "marginally relevant or repetitive evidence" without running afoul of the defendant's rights, as long as the exclusion of the testimony is not arbitrary. *Herbst*, 668 F.3d at 585 (quoting *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)) (internal quotation marks omitted).

In this case, the court's refusal to permit defense counsel to call Agent Furman as a witness was not arbitrary and did not violate his constitutional right to present a defense. As revealed in the offer of proof, the majority of the questions Defendant sought to ask were repetitive of prior questions posed to the agents during extensive cross-examination. Moreover, Defendant had not listed Agent Furman on his witness list and Defendant had not gone through the proper procedures to call Agent Furman as a defense witness. During his closing argument, Defendant was able to—and did in fact—argue that the government had not produced evidence of his guilt but, rather, had elected to rely on unreliable informants instead of conducting a thorough investigation. None of the questions defense counsel asked in the offer of proof would have impacted the final outcome in light of the strength of the government's case against Defendant.

The court agrees with the government's analysis of the cases cited by Defendant in support of his argument. The court finds that each case Defendant cites is distinguishable from the facts in this case.

Accordingly, the court finds no basis to set aside the verdict and order a new trial. Defendant had ample opportunity to cross-examine the government's witnesses and present his own defense. Thus, Defendant's right to present a defense was not compromised.

## V. CONCLUSION

In light of the foregoing, the Motion for New Trial (docket no. 186) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 8th day of November, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA